## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS – WESTERN SECTION

**CIVIL ACTION NO.**

| | |
|---|---|
| **MICHELLE CRUZ,**  )<br>**PLAINTIFF**  )<br>  )<br>**V.**  )<br>  )<br>**CITY OF HOLYOKE, HOLYOKE POLICE**  )<br>**DEPARTMENT, LIEUTENANT**  )<br>**DAVID PRATT, DETECTIVE PAUL**  )<br>**BARKYOUMB, DETECTIVE BRIAN DUKE,**  )<br>**DETECTIVE ANTHONY BRACH,**  )<br>**DEFENDANTS**  )<br>  ) | **CIVIL COMPLAINT**<br>**JURY TRIAL DEMAND** |

## NATURE OF ACTION

1.     Through this action, Plaintiff, Michelle Cruz (hereinafter "Ms. Cruz") seeks damages for personal injuries suffered as a result of the conduct of the Holyoke Police Department.  Plaintiff asserts federal and state civil rights claims against the Holyoke Police Department, Detective Paul Barkyoumb, Detective Brian Duke, Detective Anthony Brach, and Lieutenant David Pratt and their employer, the City of Holyoke, under the Massachusetts Tort Claim Act, Massachusetts General Law, chapter 258, section 4, and under 42 United States Code, section 1983 pursuant to *Monnell v. Department of Social Services*, 436 U.S. 658 (U.S. 1978).  These claims arise from the criminal harassment and stalking of Ms. Cruz suffered at the hands Officer Paul Barkyoumb and other Officers of the City of Holyoke Police Department.

## JURISDICTION

2.      This action is brought pursuant to 42 U.S.C. § 1983 and to the Fourth and Fourteenth Amendments to the United States Constitution.  Jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1343 as well as the aforementioned statutory provisions. Plaintiff invokes the pendant jurisdiction of this Court to hear and to decide state claims arising under M.G.L. c. 258 § 4 (Massachusetts Tort Claims Act), and the decisional law of the Commonwealth of Massachusetts.

## PARTIES

3.      Plaintiff, Michelle Cruz (hereinafter "Ms. Cruz"), is a citizen of the United States residing in Hampshire County and at all times material to this case was a resident of 27 Hillside Road, Southampton, Massachusetts and South Hadley, MA.

4.      Defendant Paul Barkyoumb was at all times material to this case a duly appointed police officer of the Holyoke Police Department in the City of Holyoke, Massachusetts with and address of 138 Appleton Street, Holyoke, MA 01040.

5.      Defendant Brian Duke was at all times material to this case a duly appointed police officer of the Holyoke Police Department in the City of Holyoke, Massachusetts with and address of 138 Appleton Street, Holyoke, MA 01040.

6.      Defendant Anthony Brach was at all times material to this case a duly appointed police officer of the Holyoke Police Department in the City of Holyoke, Massachusetts with and address of 138 Appleton Street, Holyoke, MA 01040.

### a. Supervisory Defendant

7.      Defendant Lieutenant David Pratt is employed by the Holyoke Police Department and was at all times material to this case duly appointed police lieutenant

of the Holyoke Police Department in the City of Holyoke, Massachusetts with and address of 138 Appleton Street, Holyoke, MA 01040 and Officer Paul Barkyoumb's direct supervisor.

8.      Defendant, City of Holyoke, is a municipality duly incorporated under the laws of the Commonwealth of Massachusetts, which employs or employed the Defendant Officers.

9.       Each of these Defendants named herein are sued in both their individual and official capacity.

10.      The acts and omissions of Defendants were taken or occurred under color of the laws of the Commonwealth of Massachusetts and the City of  Holyoke.

## FACTS

11.      Ms. Cruz, initially met Officer Paul Barkyoumb of the Holyoke Police Department in February of 2007.

12.      In April 2007 Ms. Cruz began a two year relationship with Mr. Barkyoumb.

13.      In November of 2007 Ms. Cruz and Mr. Barkyoumb bought a home together at 27 Hillside Road, Southampton, Massachusetts.  As soon as they moved in together the relationship between Ms. Cruz and Mr. Barkyoumb immediately began to take a troubling turn. Mr. Barkyoumb became more controlling of Ms. Cruz and became extremely jealous.

14.     When Ms. Cruz began employment in Connecticut, Mr. Barkyoumb became more jealous and paranoid; concerned that Ms. Cruz would be courted by someone in Connecticut.

15.     Mr. Barkyoumb would become upset if he called or texted and Ms. Cruz did not respond while she was at work.

16.     Despite her attempts at explaining her employment, he would become irate if he could not reach her at work.

17.     The relationship quickly regressed to a point that around January of 2009, Ms. Cruz began sleeping in her daughter's room and locking the door at night.

18.     The arguments between Mr. Barkyoumb and Ms. Cruz began to increase and she was scared for her own and her children's safety.

19.     Mr. Barkyoumb would snap at Ms. Cruz when she didn't respond to him as fast as he wanted her to and he would follow her around the house as she moved to avoid confrontations with him.

20.     Mr. Barkyoumb began having outbursts about bizarre things.

21.     By March 2009 Ms. Cruz was only living at the house part time and when she was not at the house she was staying with her parents.

22.     After their relationship ended Ms. Cruz and Mr. Barkyoumb stayed at the house separately during different times until Ms. Cruz finally moved out of the home on or about April 29-30, 2009.

23.     In or about the middle to end of April 2009 Mr. Barkyoumb began sending Ms. Cruz unwanted text messages.

24.    Ms. Cruz told him to stop contacting her either through text message or on the phone.  These messages were being sent from Mr. Barkyoumb's work Nextel cellular phone number.  Ms. Cruz told Mr. Barkyoumb that she was going to block his phone number from her cell phone if he did not stop.

25.    When Mr. Barkyoumb did not stop sending the texts Ms. Cruz contacted T-Mobile and purchased a program to block his calls.

26.    Mr. Barkyoumb then began texting Ms. Cruz on her State of Connecticut issued Sprint Blackberry cellular phone. Ms. Cruz then arranged through her job for his numbers to be blocked on her Blackberry work phone as well.

27.    At the end of April 2009 when Ms. Cruz was making arrangements to remove her belongings from their joint home and she continued to receive unwanted text messages from Mr. Barkyoumb.

28.    Ms. Cruz at the time was utilizing the services of an attorney in order to help facilitate the sale of the home as was Mr. Barkyoumb.

29.    On or about April 29, 2009 Ms. Cruz informed her attorney, Kevin Maltby, of this unwanted contact from Mr. Barkyoumb and as a result Ms. Cruz's attorney contacted Mr. Barkyoumb's attorney, Jeffrey Weiser and advised him that Mr. Barkyoumb should stay away from Ms. Cruz and stop contacting her.

30.    Ms. Cruz's attorney further informed Mr. Barkyoumb's attorney that she was in fear, that she continued to receive text messages that included accusations and innuendos and that Mr. Barkyoumb was heading into a possible request for a restraining order and that Ms. Cruz wished to avoid that.

31.     On or about April 28th or 29th 2009 as a result of the unwanted text messages, and specifically a text from Mr. Barkyoumb that he had driven by Ms. Cruz's parent's home and she was not home, Ms. Cruz contacted Sergeant Daniel Reardon of the Holyoke Massachusetts Police Department, a superior to Mr. Barkyoumb.

32.     Ms. Cruz informed Sergeant Reardon that Mr. Barkyoumb was driving by her parents' home and Ms. Cruz requested that Sergeant Reardon "reel Paul in" and have someone speak with Mr. Barkyoumb and encourage him to stop sending her the text messages.

33.     Ms. Cruz informed Sergeant Reardon that she was afraid. After Ms. Cruz's conversation with Sergeant Reardon, Mr. Barkyoumb begin contacting Ms. Cruz even more than he had been previously been and voiced his anger that she had contacted Daniel Reardon, his superior.

34.     The third week of May every year a drug training is held for police officers.  Mr. Barkyoumb attended this training in 2009.  During this week Ms. Cruz was receiving text messages from Mr. Barkyoumb accusing her of dating various different men. Specifically, Ms. Cruz received texts that included an accusation that Ms. Cruz was dating another Holyoke officer.

35.     Ms. Cruz learned later that several Holyoke Officers made up a story and told Mr. Barkyoumb that Ms. Cruz was dating Officer Joe Garcia, who Mr. Barkyoumb did not like. Ms. Cruz was never involved with Mr. Garcia.

36.     The Officers wanted to "mess" with Mr. Barkyoumb. However this caused Mr. Barkyoumb to go crazy and the texts to Ms. Cruz increased. Mr. Barkyoumb also harassed Joe Garcia for almost two months.

37.     On or about May 22, 2009 Ms. Cruz received a four page letter which had been left in her screen door from Mr. Barkyoumb.

38.     On or about May 24, 2009 Ms. Cruz made a formal complaint to Officer Tammy O'Neil at the South Hadley Massachusetts Police Department after receiving a twenty (20) minute message from Mr. Barkyoumb on her cell.

39.     This formal complaint was made to the South Hadley Police Department as this was where Ms. Cruz was residing at the time.

40.     Ms. Cruz told Officer O'Neil that she did not want to get a restraining order at that point in time that she was just there to inform her of what had been going on.

41.     The South Hadley Police Department informed Ms. Cruz that they had contacted Mr. Barkyoumb and advised him to no longer attempt to contact her in any way.

42.     To the best of Ms. Cruz's knowledge Mr. Barkyoumb was not disciplined in any way by the Holyoke Police Department after he was contacted by the South Hadley Police Department as a result of her formal complaint to them.

43.     Mr. Barkyoumb's attempts to contact Ms. Cruz stopped for a couple of weeks after he was contacted by the South Hadley Police Department.

44.     On or about June 17, 2009 Ms. Cruz received another letter from Mr. Barkyoumb in the mail. Mr. Barkyoumb continued to tell Ms. Cruz he loved her and wanted to be with her.

45.     On or about June 17, 2009 Ms. Cruz reported this to the South Hadley Police Department and they again suggested that she should pursue a restraining order.

46.     Ms. Cruz was still reluctant to seek such an order at that time.

47.     In early May 2009 Mr. Barykyoumb also began contacting Ms. Cruz's son.

48.     In the middle of May 2009 Ms. Cruz's son's cell phone broke he told Ms. Cruz that he did not want another one because he did not want Mr. Barkyoumb to continue contacting him.

49.     Ms. Cruz's son did not get a new cell phone until approximately the first week of July 2009 because he did not want to be contacted by Mr. Barkyoumb. As soon as the phone was activated he immediately received a text message from Mr. Barkyoumb.

50.     At approximately the same time Mr. Barykoumb's daughter began making attempts to contact Ms. Cruz on his behalf. Mr. Barykoumb's daughter informed her that she did not like how Ms. Cruz had left things with her father and that he missed her.

51.     In approximately the first week of July 2009 Ms. Cruz called Mr. Barkyoumb's direct supervisor, Lieutenant David Pratt to make him aware that Mr. Barkyoumb was continuing to harass and stalk her.

52.     Lieutenant Pratt indicated that he was aware of the problems and that he had talked to Mr. Barkyoumb, but that he thought he had stopped contacting her.

53.     To the best of Ms. Cruz's knowledge there was still no discipline given to Mr. Barkyoumb even after speaking with Lieutenant Pratt.

54.     At that point Ms. Cruz told Lieutenant Pratt that she was considering seeking a restraining order and Lieutenant Pratt told Ms. Cruz to do what she had to do.

55.     On July 1, 2009 Ms. Cruz sought a restraining order from the Eastern Hampshire District Court, Belchertown, MA.

56.     A temporary restraining order was issued on July 1, 2009 to July 9, 2009 the date of hearing.

57.     Mr. Barkyoumb submitted an affidavit on July 2, 2009 as a result of his receipt of temporary restraining order.

58.     In this affidavit Mr. Barkyoumb acknowledged that there had been text messages, involving third parties, and that Ms. Cruz was interpreting the messages as attempts to contact her.

59.     On July 9, 2009, a hearing on a full no-contact order was held in the Eastern Hampshire District Court, Belchertown, MA.

60.     After hearing the order was not reinstated because the court determined that there was no physical violence or threat of physical violence despite Ms. Cruz stressing to the court that she was in fear of the safety of both herself and her children.

61.     Lieutenant Pratt testified on behalf of Mr. Barkyoumb. Detective Anthony

Brach accompanied Lieutenant Pratt and Mr. Barkyoumb to the hearing.

62.     After the denial of the restraining order in the Eastern Hampshire District

Court, Ms. Cruz stated to the court that although there were never any arrests or acts of

physical violence between them she was concerned for the safety of her and her

children because Mr. Barkyoumb would not leave them alone.

63.     On September 9, 2009 at approximately 12:00 p.m., Ms. Cruz began to get

a series of text messages on her personal T-Mobile cellular phone from the number 347-

219-4783.

64.     Ms. Cruz was not familiar with this number and she responded to the text

by asking who it was in an attempt to determine who the messages were coming from.

65.     Over a period of time beginning at approximately 12:00 p.m. through

approximately 5:55 p.m., Ms. Cruz received seven (7) total text messages from that

number that stated the following:

1.     **12:01 p.m.:**  "I will get you back for it." *Ms. Cruz responded-Who's this?*
2.     **2:40 p.m.:**  "Guess. I won't tell. Psycho." *Ms. Cruz responded-Don't text me again*
3.     **2:52 p.m.:** "Y R U afraid" *Ms. Cruz responded-Leave me alone, I know who you are.*
4.     **3:00 p.m.:** "prove it psycho" *Ms. Cruz responded-It's not hard to prove, leave me alone.*
5.     **4:19 p.m.:** "R U afraid? Prove that. Psycho, dike, bitch."
6.     **5:38 p.m.:** "Nice try. Like I would answer, psycho." *Ms. Cruz responded-What? Leave me alone.*
7.     **5:55 p.m.:** "Like U left me alone. Psycho cunt. I will find a way to get you back."

66.    On September 9, 2009 Ms. Cruz contacted the Connecticut State Police and made an initial harassment complaint with the Massachusetts State Police.

67.    On September 10, 2009 at approximately 3:00 p.m. Ms. Cruz began receiving additional text messages again from phone number 347-219-4783.  These messages were similar in context to the messages that she was sent on the previous day.

68.    On September 10, 2009 Ms. Cruz reported the unwanted harassing text messages to the Connecticut State Police Central District Major Crime Squad at Troop H in Hartford, CT as a result of being afraid of imminent physical injury. A harassment investigation began as a result of Ms. Cruz's complaint.

69.    On September 10, 2009 Ms. Cruz received an Ex-Parte restraining order against Detective Barkyoumb.  This restraining order was in effect until September 21, 2009 the date of the restraining order hearing in front of Judge Solomon.

70.    Through the investigation into the text messages that Ms. Cruz was receiving it was learned that the 347-219-4783 number was from a prepaid phone that originated out of New York, New York.

71.    Through the investigation it was learned that Mr. Barkyoumb who was part of the Holyoke Police Department task force executed a search and seizure warrant on September 4, 2009 at 527 South Street, Holyoke, MA and that the cell phone being used to send her the text messages belonged to an individual, Elizabeth Perez, who was arrested during this search and seizure.

72. Elizabeth Perez, the individual belonging to cell phone number 347-219-4783 made an official complaint regarding the theft of her cell phone and cash by officers during the incident.

73. As a result of her complaints of criminal harassment and stalking to supervisors within the Holyoke Police Department and their lack of action to keep Detective Barkyoumb from harassing her, Ms. Cruz was forced to pursue a restraining order with the State of Connecticut.

74. A three day hearing on this application for restraining order was held in front of Judge Elliot Solomon.  Ms. Cruz and Mr. Barkyoumb testified at this hearing as well as several officers of the Holyoke Police Department, including supervisors Lieutenant Pratt and Sergeant Daniel Reardon as well as Detective Brian Duke, Detective Anthony Brach.

75. Sergeant Reardon testified during this hearing that Ms. Cruz contacted him in late April to the beginning of May 2009 requesting that he speak with Mr. Barkyoumb and ask him to leave her alone.

76. When Sergeant Reardon was asked at the hearing what he spoke to Mr. Barkyoumb about after Ms. Cruz contacted him he indicated that he told Mr. Barkyoumb that Ms. Cruz didn't want to be contacted by him, that  she wanted to be left alone and that she didn't want him contacting her children.

77. Sergeant Reardon indicated that as a result of Ms. Cruz's call to him that he contacted Mr. Barkyoumb's immediate supervisor, Lieutenant Pratt and explained what was going on.

78.     Sergeant Reardon also testified that at some point someone in the police station had made up some false rumors that one of the other officers may be dating Ms. Cruz.

79.     Sergeant Reardon testified that this was a joke and done facetiously, but that it bothered Mr. Barkyoumb.

80.     Sergeant Reardon testified that as a result of this "joke" Mr. Barkyoumb asked him whether Ms. Cruz was going out with anyone.  Sergeant Reardon told Mr. Barkyoumb that Ms. Cruz was not going out with anyone.

81.     Sergeant Reardon testified that he saw Ms. Cruz on another night as he and his wife were watching her daughter and that she was crying and seemed emotionally overwhelmed.

82.     Lieutenant Pratt, Mr. Barkyoumb's immediate supervisor on the Holyoke Police Department testified that Ms. Cruz contacted him in early July 2009 regarding unwanted contact from Mr. Barkyoumb.

83.     Lieutenant Pratt testified that as a result Ms. Cruz contacting him, he spoke with Mr. Barkyoumb and told him to stop contacting Ms. Cruz.

84.     Lieutenant Pratt also testified that he was unaware of any stolen phones from the September 4, 2009 raid mentioned above.

85.     The knowledge of the stolen phones by all of the officers was at least two weeks prior to the restraining order hearing that began on September 21, 2009.

86. Sergeant Reardon and Detective Brach were both aware that Mr. Barkyoumb was trying to get rid of a bag of approximately ten cell phones because he was concerned that he was going to get in trouble.

87. Additionally on September 8, 2009 Assistant District Attorney Joan Dietz contacted Lieutenant Pratt via written correspondence inquiring as to whether there were any cell phones or cash taken from the search and seizure as the defendants had made a claim that cell phones and cash were taken.

88. This communication between ADA Dietz and Lieutenant Pratt was well in advance of the restraining order hearing in Connecticut where he testified he was unaware of any stolen phones.

89. Elizabeth Perez testified at the restraining order hearing that her cell phone had been taken during the search of her apartment by Holyoke Police Officers and she identified Detective Barkyoumb as the Officer who had taken the cell phone.

90. Detective Brian Duke and Detective Anthony Brach of the Holyoke Police Department both testified at the restraining order hearing on Mr. Barkyoumb's behalf that they were in the presence of Mr. Barkyoumb, either at meetings or at work related briefings during the time that Mr. Barkyoumb would have been sending the text messages to Ms. Cruz. They both testified that they did not see him send a text or make a phone call.

91. On October 1, 2009 Judge Solomon concluded after hearing that the testimony of the Holyoke Officers was inconsistent and therefore not credible.

Therefore Judge Solomon concluded that the standard for issuing a restraining order was easily sustained.

92.    On October 1, 2009 Judge Solomon also made the determination that there was no question that Mr. Barkyoumb was responsible for sending the text messages to Ms. Cruz and granted a six month restraining order.

93.    On or about October 1, 2009 relative to the Connecticut State Police harassment investigation Connecticut State Police Officer Christopher Fongemie interviewed Officer Anthony Brach.

94.    Officer Brach acknowledged that he was present during the execution of the search and seizure warrant on September 4, 2009 at 527 South Street, Holyoke, MA.

95.    Officer Brach informed Officer Fongemie that any evidence seized during this search was turned over to him and that he documented the seizing officer's name along with the location, time and evidence seized.

96.    Officer Brach stated that he recalled seeing cell phones present in the residence, but that no cell phones were turned over to him as evidence during the search.

97.    Officer Brach stated that he became aware of the missing cell phones when Lieutenant David Pratt contacted him on September 8, 2009 and inquired if any cell phones had been taken from the residence during the search.

98.    Officer Brach stated that he spoke with Detective Barkyoumb several times after learning of the allegation and that Detective Barkyoumb denied any involvement.

99.     On or about October 13, 2009 Officer Christopher Fongemie interviewed and obtained a written statement from Sergeant Reardon.

100.    Sergeant Reardon stated that on September 10, 2009 he saw Detective Barkyoumb seated at his desk with a bag containing what appeared to be 8-10 cellular phones.

101.    Sergeant Reardon stated that Detective Barkyoumb informed him that he was trying to get rid of the cell phones because fellow narcotics officers were going to say that he had the phones in his desk.

102.    Sergeant Reardon stated that he asked Detective Barkyoumb who the cell phone belonged to and he told him that they were his.  Sergeant Reardon stated that Detective Barkyoumb seemed extremely nervous and adamant about getting rid of the phones.

103.    Sergeant Reardon further stated that he informed Detective Barkyoumb that the cell phones could ultimately exonerate him and that at that point he took possession of the cell phones from Detective Barkyoumb and left the Holyoke Police Department with the cell phone in his possession.

104.    Sergeant Reardon stated that Officer Anthony Brach was present on September 10, 2009 during the conversation and that Officer Brach also agreed Detective Barkyoumb shouldn't get rid of the cell phones.

105.    Sergeant Reardon stated that he took the bag of cell phones home in an attempt to determine whether or not Barkyoumb had used them to text Ms. Cruz; he

was unable however to do so because the phones were not functioning properly either do to dead batteries or missing SIM cards.

106.    Sergeant Reardon stated that on October 1, 2009 he saw Detective Barkyoumb and that he asked Officer Reardon if he still had the cell phones.  Sergeant Reardon stated that Office Barkyoumb informed him that he feared that Officer Roger Goodreau was going to tell investigating troopers that Detective Barkyoumb was looking through the cell phones during the search of the Holyoke apartment.

107.    On January 20, 2010 Officer Fongemie re-interviewed Officer Tony Brach and he again acknowledged that on September 12, 2009 he observed Detective Barkyoumb to be in possession of a clear plastic bag containing various cell phones. Officer Brach estimated that the bag contained approximately 10 cell phones.

108.    This was contrary to the testimony that was given at the restraining order hearing in front of Judge Solomon Sergeant Reardon and Officer Brach all testified that Detective Barkyoumb only had one cell phone even though he was aware that he had a bag of approximately ten cell phones.

109.    Further it is clear that during this hearing Lieutenant Pratt was aware that there was a complaint filed by Elizabeth Perez indicating that her cell phone had been taken when the Holyoke Police Department arrested her at 527 South Street, Holyoke, MA.

110.    On September 9, 2009 Mr. Barkyoumb was charged with criminal harassment of Ms. Cruz in the Westfield District Court.

111.    On February 9, 2010 as a result of their investigation in to Ms. Cruz's Complaints an arrest warrant for Officer Paul Barkyoumb was issued, which charged him with two counts of 2nd Degree Harassment pursuant to GCS 53a-183.

112.    On September 13, 2010 Mr. Barkyoumb pled guilty to criminal harassment with respect to the Plaintiff in the Westfield District Court and received a sentence of two years of probation.

113.    On September 13, 2010 Mr. Barkyoumb sent his letter of resignation to the Chief Anthony Scott at the Holyoke Police Department as a result of his guilty plea to criminal harassment charges in the Westfield District Court.

114.    In or about April 2010 Mr. Barkyoumb entered into the diversion program with regards to the Connecticut criminal harassment case.

115.    Ms. Cruz reported the criminal harassment and stalking by Mr. Barkyoumb on at least five occasions and to the best of her knowledge Mr. Barkyoumb was never disciplined by the Holyoke Police Department and in fact during the restraining order hearings Mr. Barkyoumb's fellow officers, including supervisors of the department, actually testified on his behalf.

116.    On September 8, 2011 a presentment letter was sent to the City of Holyoke and the Office of the City Solicitor via certified return receipt mail, in order to give them notice of action.  However no response was received.

<u>COUNT I</u>

(v. City of Holyoke for Violation of 42 U.S.C. 1983, specifically under *Monnell v. Department of Social Services*, 436 U.S. 658 (U.S. 1977))

117.    Plaintiff incorporates as if fully set forth herein paragraphs 1 through 116 above.

118.    As a direct and proximate result of the Defendants' conduct as described herein, Plaintiff's constitutional rights as protected by 42 U.S.C. Section 1983 have been violated.

119.    It was the custom and practice of the City of Holyoke to inadequately and improperly investigate complaints of criminal harassment and stalking against police officers.  It was this failure to adequately and properly investigate that was the direct and proximate cause of the emotional injuries suffered by the Plaintiff.

120.    Further it was the custom and practice of the City of Holyoke to inadequately and improperly supervise and train its police officers, including the supervising defendants and defendant officers.  It was this failure to adequately and properly supervise that allowed the continued constitutional violations of the Plaintiff and was the direct and proximate cause of the emotional injuries suffered by the Plaintiff.

<u>COUNT II</u>

(v. Paul Barkyoumb, Detective Brian Duke, Detective Anthony Brach, Lieutenant Pratt for Violation of 42 U.S.C. 1983)

121.    Plaintiff incorporates as if fully set forth herein paragraphs 1 through 120 above.

122.    By engaging in the conduct described above, supervisory Defendant Lieutenant Pratt and Defendant officers Paul Barkyoumb, Detective Brian Duke,

Detective Anthony Brach, violated the Plaintiff's civil rights as secured by the United
States Constitution.

123.    The conduct of these Defendants' was a direct and proximate cause of the
Plaintiff's injuries which include severe emotional distress, severe anxiety, the
continued feeling of being unsafe and frightened.

<u>COUNT III</u>

(v. Detective Paul Barkyoumb, Detective Brian Duke, Detective Anthony Brach,
and Lieutenant Pratt, for Violation of 42 U.S.C. 1983-Conspiracy to Violate Civil Rights)

124.    Plaintiff incorporates as if fully set forth herein paragraphs 1 through 123
above.

125.    Under color of state law Officer Paul Barkyoumb, Detective Brian Duke,
Detective Anthony Brach, and Lieutenant David Pratt conspired and entered into
express and/or implied agreements, understandings, or meetings of the minds amount
themselves to deprive the Plaintiff of her constitutional right by testifying falsely at the
restraining order hearing on September 21, 2009 and September 24, 2009 in front of
Judge Solomon.

126.    Defendants Officer Paul Barkyoumb, Detective Brian Duke, Detective
Anthony Brach and supervisory defendant Lieutenant David Pratt willfully
participated in this illegal objective by various means, with the intent to further some
purpose of the conspiracy.

127.    Defendants Officer Paul Barkyoumb, Detective Brian Duke, Detective
Anthony Brach and supervisory defendant Lieutenant David Pratt's actions evidenced

reckless and callous disregard for, and deliberate indifference to the Plaintiff's constitutional rights.

128.    By engaging in the conduct described above, the Defendants acting in concert with each other and under the color of law violated the Plaintiff's rights as secured by the United States Constitution.

129.    The conduct of these Defendants as described in the foregoing paragraphs was a proximate cause of the Plaintiff's severe emotional distress, loss of sleep, severe anxiety, feelings of being unsafe and frightened.

<u>COUNT IV</u>

(v. Detective Brian Duke, Detective Anthony Brach, and Lieutenant David Pratt for Violation of 42 U.S.C. 1983-Ratification)

130.    Plaintiff incorporates as if fully set forth herein paragraphs 1 through 129 above.

131.    Defendants Detective Brian Duke, Detective Anthony Brach, and Lieutenant David Pratt all stood by without intervening to prevent the misconduct complained by the Plaintiff on approximately five separate occasions.

132.    Further Defendants Detective Brian Duke, Detective Anthony Brach, and Lieutenant David Pratt testified on Detective Barkyoumb's behalf at a restraining order hearing despite the numerous complaints that the Plaintiff had made about Detective Barkyoumb.

133.    Detective Brian Duke, Detective Anthony Brach and Lieutenant David Pratt ratified the actions of Officer Paul Barkyoub by allowing him to continue to violate the Plaintiff's constitutional rights on numerous occasions.

134. As a result of the defendants ratification of defendant Officer Paul Barkyoumb's actions even after the Plaintiff's numerous complaints and even after Detective Barkyoumb had been contacted by the South Hadley Police Department, in order to prevent the continued violation of the Plaintiff's constitutional rights, the Plaintiff suffered substantial emotional distress.  These Defendants had a reasonable opportunity to intervene and prevent this harm, but failed continuously to do so.

135.    The misconduct was undertaken with malice, willfulness, and reckless indifference to the rights of others.

136.    As a result of this misconduct, Plaintiff sustained and continues to suffer from severe emotional distress, loss of sleep, severe anxiety, feels unsafe and frightened and continues to relive the emotional attacks on her by Officer Paul Barkyoumb of the Holyoke Police Department.

<u>COUNT V</u>

(v. Lieutenant Pratt for Violation of 42 U.S.C. 1983-Failure to Intervene)

137.    Plaintiff incorporates as if fully set forth herein paragraphs 1 through 136 above.

138.    Supervisory defendant Lieutenant David Pratt stood by without intervening to prevent the misconduct complained by the Plaintiff on approximately five separate occasions.

139.    Supervisory defendant Lieutenant David Pratt violated the Mandatory Policy for Law Enforcement Response to Domestic Violence as required by the Holyoke Police Department, which requires a thorough investigation of claims of domestic violence, including interviews of the victim and suspect as well as the preparation of reports of the claims.  Lieutenant Pratt failed to take any of these steps and thus violated the policy of the Holyoke Police Department by failing to thoroughly investigate Ms. Cruz's claims against Detective Barkyoumb.

140.    Further Defendant Lieutenant David Pratt testified falsely at a restraining order hearing when he testified that he was unaware of any phone having been stolen during a drug bust that Detective Barkyoumb was involved in, even though he had been made aware of a complaint of a stolen phone by one of the arrestees two weeks prior to the restraining order hearing.  The testimony of Lieutenant Pratt was given on the behalf of Detective Barkyoumb despite the numerous complaints that the Plaintiff had made about Detective Barkyoumb.

141.    As a result of supervising defendant Lieutenant David Pratt's failure to intervene and discipline Detective Barkyoumb after the Plaintiff's numerous complaints and even after Detective Barkyoumb had been contacted by the South Hadley Police Department, in order to prevent the continued violation of the Plaintiff's constitutional rights, the Plaintiff suffered substantial emotional distress.  This Defendant had a reasonable opportunity to intervene and prevent this harm, but failed continuously to do so.

142.    The misconduct was undertaken with malice, willfulness, and reckless indifference to the rights of others.

143.    As a result of this misconduct, Plaintiff sustained and continues to suffer from severe emotional distress, loss of sleep, severe anxiety, feels unsafe and frightened and continues to relive the emotional attacks on her by Officer Paul Barkyoumb of the Holyoke Police Department.

## COUNT VI

(v.  City of Holyoke, for Violation of M.G.L. ch. 258 § 4 – General Negligence)

144.    Plaintiff incorporates as if fully set forth herein paragraphs 1 through 143 above.

145.    Defendant City of Holyoke owed Plaintiff a duty to exercise reasonable care, which it breached.

146.    As a direct and proximate result of the negligence of the Defendant City of Holyoke, the Plaintiff has and continues to suffer from severe emotional distress, loss of sleep, severe anxiety, feels unsafe and frightened and continues to relive the emotional attacks on her by Officer Paul Barkyoumb of the Holyoke Police Department.

## COUNT VII

(v. City of Holyoke for Violation of M.G.L. ch. 258 § 4 – Negligent Hiring,
Training and Supervision of Defendant Police Officers)

147.    Plaintiff incorporates as if fully set forth herein paragraphs 1 through 146 above.

148.    Defendant City of Holyoke owed the Plaintiff a duty to exercise

reasonable care in the hiring, supervision and training of its employees, including but

not limited to Detective Paul Barkyoumb, Detective Brian Duke, Detective Anthony

Brach which it breached.

149.    As a direct and proximate result of the negligence of the Defendant, City

of Holyoke, the Plaintiff has suffered and continues to suffer from severe emotional

distress, loss of sleep, severe anxiety, feels unsafe and frightened and continues to relive

the emotional attacks on her by Officer Paul Barkyoumb of the Holyoke Police

Department.

<u>COUNT VIII</u>
(v. Paul Barkyoumb, Detective Brian Duke, Detective Anthony Brach, and
Lieutenant David Pratt for Intentional Infliction of Emotional Distress)

150.    Plaintiff incorporates as if fully set forth herein paragraphs 1 through 149

above.

151.    Defendants Paul Barkyoumb, Detective Brian Duke, Detective Anthony

Brach, and Lieutenant David Pratt, knew or should have known that by engaging in the

conduct described above, the Plaintiff would likely suffer from emotional distress.

152.    Defendants' actions were intentional, reckless, extreme and outrageous

beyond all bounds of decency, and utterly intolerable in a civilized  community.

153.    As a result of Defendants' intentional and outrageous conduct the Plaintiff

has suffered and continues to suffer from severe emotional distress, loss of sleep, severe

anxiety, feels unsafe and frightened and continues to relive the emotional attacks on her

by Officer Paul Barkyoumb.

<u>COUNT IX</u>
(v. Paul Barkyoumb, Detective Brian Duke, Detective Anthony Brach, and
Lieutenant David Pratt for Negligent Infliction of Emotional Distress)

154.    Plaintiff incorporates as if fully set forth herein paragraphs 1 through 153 above.

155.    Defendants Paul Barkyoumb, Detective Brian Duke, Detective Anthony Brach and Lieutenant David Pratt were negligent in engaging in the above-mentioned conduct, from which it was reasonable foreseeable that the Plaintiff would likely suffer from emotional distress.

156.    As a direct and foreseeable result of Defendants' outrageous conduct the Plaintiff has suffered and continues to suffer from severe emotional distress, loss of sleep, severe anxiety, feels unsafe and frightened and continues to relive the emotional attacks on her by Officer Paul Barkyoumb.

**<u>PRAYER FOR RELIEF</u>**

157.    WHEREFORE, to redress the injuries proximately and directly caused by the Defendants' conduct as stated in paragraphs 1-156 above, Plaintiff respectfully requests the following relief from this Honorable Court:

      a.    Award compensatory and punitive damages in an amount to be established at trial;

      b.    award Plaintiff's attorneys' fees;

      c.    award for reasonable and customary costs, expenses and interest incurred in the pursuit of this action;

d.      award such other and further relief as this court deems necessary,

fair and appropriate.

## **JURY DEMAND**

Plaintiff demands a jury trial on all claims so triable.

RESPECTFULLY SUBMITTED,
The Plaintiff by Her Attorney

/s/ Alan J. Black
Alan J. Black, Esq.
Law Offices of Alan J. Black
30 Pleasant Street, Unit 3
Northampton, MA 01060
(413) 732-5381
BBO# 553768